# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00257-SCT

*JOHN E. RAWSON AND THE NEWBORN GROUP, P.A.*

*v.*

*PATRICIA JONES, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF TIMOTHY SPANN, DECEASED, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF TIMOTHY SPANN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/1998 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GEORGE QUINN EVANS |
| | CAROLYN ALLEEN McLAIN |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER P. WILLIAMS |
| | G. JOSEPH DIAZ, JR. |
| | DENNIS C. SWEET, III |
| | KENNETH S. WOMACK |
| | JOHN D. GIDDENS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 06/28/2001 |
| MOTION FOR REHEARING FILED: | 7/12/2001; denied 5/23/2002 |
| MANDATE ISSUED: | 5/30/2002 |

**BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Patricia Jones filed this medical malpractice wrongful death action against Dr. John E. Rawson and The Newborn Group, P.A. and obtained a jury verdict of $1 million against them. Aggrieved, Dr. Rawson and The Newborn Group appeal from the judgment based on that verdict after a set off. Jones cross-appeals the trial court's allowance of a set off based upon a settlement between Jones and a co-defendant. Finding that the cause of action against Dr. Rawson and The Newborn Group, P.A., was barred by the statute of limitations, we reverse and render.

## I. FACTS AND PROCEEDINGS BELOW

¶2. Patricia Jones gave birth to Timothy Spann on April 7, 1994. Timothy died the following day on April 8, 1994. On April 8, 1996, Jones filed a complaint in Hinds County Circuit Court against Methodist Hospital, Jackson-Hinds Birth Center, Dr. Carl Reddix, and John Does 1-10 alleging medical negligence in the death of her son. She filed an amended complaint three days later. The amended complaint named the same parties as defendants. Subsequently, Dr. Reddix was dismissed with prejudice by agreed order on March 17, 1997. On January 14, 1997, Jones moved to add Dr. John Rawson as a defendant. On May

22, 1997, Jones filed a motion to amend her complaint to add The Newborn Group, P.A. as a defendant. Jackson-Hinds Birth Center moved for summary judgment and was voluntarily dismissed by Jones. On July 8, 1997, the circuit court granted Jones' motions to add Dr. Rawson and The Newborn Group as defendants. Methodist Hospital and Jones settled prior to trial.

¶3. Dr. Rawson and The Newborn Group were added as John Doe defendants pursuant to M.R.C.P. 9(h). They moved for summary judgment claiming they had not been sued until three years after the child's death, and consequently, one year after the applicable two-year statute of limitations had run. *See* Miss. Code Ann. § 15-1-36 (Supp. 1997). This motion was denied. Dr. Rawson and The Newborn Group were the only remaining defendants at the time of trial. The jury returned a verdict in favor of Jones for $1 million. The court below allowed defendants a $400,000 set off for the amount of settlement paid to Jones by Methodist Medical Center, and a judgment was entered in favor of Jones for $600,000. Aggrieved, Dr. Rawson and The Newborn Group now appeal. Additionally, Jones has filed a cross-appeal alleging the allowance of the $400,000 set-off was improper.

## II. STANDARD OF REVIEW

¶4. The critical and dispositive issue in this case is whether the court below erred in denying the defendants' motion for summary judgment. Motions for summary judgment are properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* M.R.C.P. 56; ***Owen v. Pringle,*** 621 So. 2d 668 (Miss. 1993); ***Skelton v. Twin County Rural Elec. Ass'n,*** 611 So. 2d 931 (Miss. 1992). This Court reviews a motion for summary judgment under a de novo standard, and a motion for summary judgment is granted only when the trial court finds that the plaintiff would be unable to prove any facts to support his claim. ***Robinson v. Singing River Hosp. Sys.***, 732 So. 2d 204, 207 (Miss. 1999) (citing ***Delahoussaye v. Mary Mahoney's, Inc.***, 696 So. 2d 689, 690 (Miss. 1997)). On appeal, the trial court's decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party. ***Robinson***, 732 So.2d at 207 (citing ***Box v. State Farm Mut. Auto. Ins. Co.***, 692 So. 2d 54, 56 (Miss. 1997)).

## III. DISCUSSION

¶5. Timothy Spann died on April 8, 1994. Jones's initial complaint was filed on April 8, 1996, exactly two years to the day following Timothy's death. Her first amended complaint was filed three days later on April 11, 1996. However, Dr. Rawson and The Newborn Group (hereinafter "Defendants") were not made defendants in this suit until Jones's second amended complaint was filed on July 10, 1997. Jones moved in the court below to add defendants as fictitious parties pursuant to M.R.C.P. 9(h). She asserted that although she knew Dr. Rawson had been Timothy's treating physician as early as the day of his death, she did not know Dr. Rawson's negligence contributed to her son's death until January of 1997. In January of 1997 Jones consulted a medical expert who stated her opinion that Dr. Rawson's care of Timothy had been negligent. Jones argued, and the court below agreed, that Jones lacked knowledge of sufficient facts to impute negligence to Dr. Rawson until informed by the expert. Therefore, Jones argued that Dr. Rawson and The Newborn Group were fictitious within the meaning of Rule 9(h). We disagree.

¶6. M.R.C.P. 9(h) reads as follows:

(h) **Fictitious Parties.** When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is

discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.

¶7. The central inquiry in the case now before us is whether Jones was "ignorant" of the names of Dr. Rawson and The Newborn Group within the meaning of Rule 9(h). We addressed this issue in ***Womble v. Singing River Hosp.***, 618 So. 2d 1252 (Miss. 1993), where we stated:

> It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. *Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against that person.*

***Id.*** at 1267 (emphasis added). This language, however, does not give potential plaintiffs permission to sit on their rights. We extrapolated on ***Womble*** in ***Doe v. Mississippi Blood Servs., Inc.***, 704 So. 2d 1016 (Miss. 1997), and held the relation back privilege afforded under Rule 9 requires a plaintiff to actually exercise a reasonably diligent inquiry into the identities of the fictitious party. ***Id.*** at 1019. The purpose of Rule 9(h) is to provide a mechanism to bring in known, but unidentified, responsible parties who may only be ascertained through the use of judicial mechanisms such as discovery. ***Id.***

¶8. In ***Doe***, we cited with approval our ***Womble*** holding that due to the reasonable availability of numerous medical records on file at the hospital "a reasonably diligent inquiry by the appellants into the history of the deceased's medical treatment would have revealed to appellants the identities of the persons they sought to identify categorically . . . ."***Id.*** at 1018 (citing ***Womble,*** 618 So. 2d at 1267). Such is the case here.

¶9. Our analysis of facts and application of law in this case reveal the following critical points were before the circuit court judge at the time the motion for summary judgment was heard:

> (1) Jones knew that Dr. Rawson was her child's only treating physician as early as the day of his death.

> (2) Within one week of Timothy's death Jones hired an attorney with the intention of filing a lawsuit.

> (3) Jones and her attorney attended a death conference where Dr. Rawson was present. The death conference provided an opportunity to examine the autopsy reports and to discuss Timothy's cause of death.

> (4) Jones's deposition reveals that she discussed suing Dr. Rawson "a lot of times" with Timothy Spann, Sr. and other family members *as early as 1994* because "something should be done, because we don't have our son and we were told that he was going to be okay."

> (5) On April 8, 1996, the day the statute of limitations would have run, Jones filed her initial complaint, which did not name Dr. Rawson.

> (6) Jones filed her first amended complaint on April 11, 1996, again failing to name Dr. Rawson.

> (7) Jones consulted with the expert witness who opined Dr. Rawson may have been negligent on January 10, 1997.

> (8) Jones moved the circuit court to add Dr. Rawson as a defendant on January 14, 1997.

(9) Jones moved the circuit court to add The Newborn Group on May 22, 1997.

¶10. Jones relies heavily on her lack of an expert witness to support her argument that she did not have the facts necessary to file a lawsuit against Dr. Rawson. She claims she did consult with medical experts shortly after Timothy's death, but was not able to obtain a medical opinion imputing negligence to Dr. Rawson until January 1997. (We add that Jones's trial counsel and counselor on appeal were not her original lawyer.) Yet, the preceding paragraph makes clear that Jones did have all of the *facts* she needed to institute legal proceedings against Dr. Rawson shortly after the death of the baby. In ***Bean v. Broussard***, 587 So. 2d 908 (Miss. 1991), we stated that a medical expert is not necessary merely to institute legal proceedings. ***Bean*** began as a medical malpractice action and ended as an appeal of the imposition of Rule 11 sanctions for filing a frivolous lawsuit. We reversed the imposition of the Rule 11 sanctions stating:

> Unfortunately for [defendant in the original action], none of the cases cited states that a medical expert is needed before filing. Indeed, no cases, rules, or statutes impose such a requirement. The cases cited stand simply for the proposition that negligence in some cases cannot be established without expert medical testimony; that the physician failed to use ordinary skill and care. Each of the cases had proceeded far beyond the pre-filing stage and do not indicate whether a medical expert was retained prior to filing. While it may be the better practice to retain an expert early on, one is not required to do so.

*Id.* at 913. Thus, while Jones may have preferred to have a medical expert prior to filing a lawsuit against Dr. Rawson, it was not necessary based on these particular facts. It is important to note at this juncture there were only very minor changes made to the complaint after Jones consulted with her medical expert in January 1997. The second amended complaint which added Dr. Rawson and The Newborn Group was almost identical to the first amended complaint that was filed more than one year earlier. The supposed fictitious party unknown to the plaintiffs was the only doctor known from day one. The alleged acts of negligence were identical in the first amended complaint in April 1996 as in the July 1997 complaint adding the defendants. Specifically, both complaints asserted breaches of the duty of care in proper assessment, use and monitoring of oxygen saturations, observation of fluid intake and output, as well as additional breaches of the duty of care in Timothy's treatment. The expert opinion added nothing new to her complaint. She already knew, or with reasonable diligence should have known, the identity of the parties who rendered medical services to her son. The only thing Jones lacked was the will to sue Dr. Rawson.

¶11. The purpose of statutory time limits in general, is to compel the exercise of a right of action within a reasonable time. ***Mississippi Dep't of Pub. Safety v. Stringer***, 748 So. 2d 662, 665 (Miss. 1999). "These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected." *Id.* The purpose of Rule 9(h) specifically, is to toll the statute of limitations when, in good faith, the plaintiff is unable to identify unknown defendants. This shield protects defendants and may be waived only by them.

## IV. CONCLUSION

¶12. Dr. John E. Rawson and The Newborn Group, P.A. were not fictitious within the meaning of M.R.C.P. 9(h), and the statute of limitations now bars the cause of action against them. Accordingly, the judgment of the Hinds County Circuit Court is reversed, and judgment is rendered here finally dismissing Patricia Jones's second amended complaint and this civil action with prejudice. Because this issue is

dispositive, we need not address the additional issues raised by defendants or Jones's cross-appeal.

¶13. **REVERSED AND RENDERED.**

**PITTMAN, C.J., BANKS, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. McRAE, P.J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING**:

¶14. The Mississippi Rules of Civil Procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action." M.R.C.P. 1. Because I believe that the majority emphasizes an expedient result, rather than a just result in the face of plain authoritative precedent, I respectfully dissent.

¶15. Jones's initial complaint was filed within the applicable two-year statute of limitations governing medical malpractice cases. Barely nine months later, Jones followed the procedure delineated in M.R.C.P. 9(h) to substitute Dr. Rawson and the Newborn Group in place of fictitious John Does named in the original complaint. The majority holds that Dr. Rawson and the Newborn Group are not "fictitious parties" within the meaning of Rule 9(h) because Jones and similarly situated plaintiffs cannot sleep on their rights.

¶16. The majority's decision unjustly precludes Jones from recovery even though the original complaint was filed within the statutory period. For this reason, particularly in actions for injury or death, we view statutes of repose with disfavor and construe them to preserve a plaintiff's cause of action. *Watters v. Stripling,* 675 So.2d 1242, 1245 (Miss. 1996) (citing *Gentry v. Wallace,* 606 So.2d 1117, 1122 (Miss.1992)). Additionally, it is important to note that motions for leave to amend are within the discretion of the trial court, and absent an abuse of that discretion, this Court will not reverse. *McCarty v. Kellum*, 667 So.2d 1277, 1283 (Miss.1995); *Frank v. Dore,* 635 So.2d 1369, 1375 (Miss.1994); *Bourn v. Tomlinson Interest, Inc.*, 456 So.2d 747, 749 (Miss.1984). This is a decidedly different standard than the one the majority employs. Although one of the issues on appeal was the trial court's decision to deny summary judgment, a jury verdict was reached in this case. Thus, the applicable standard of review should be as quoted above.

¶17. The majority makes much of the fact that although Timothy Spann died on April 8, 1994, Dr. Rawson and the Newborn Group were not made named parties to the litigation until July 10, 1997. A close examination of this time span reveals that Jones actively pursued her claim and immediately upon discovering a basis to sue Dr. Rawson, joined him as a defendant. Jones filed the complaint on April 8, 1996. It is well within the rights of an injured party file a complaint on the first day the statute begins to run or the last. So long as the complaint is properly and timely filed, it should be accepted as such, and any review should proceed from the time of the filing. As the majority notes, Jones filed an amended complaint on April 11, 1996. Approximately nine months later, in January of 1997, Jones discovered through medical expert deposition testimony related to other named defendants that Dr. Rawson and the Newborn Group may have been liable for Timothy's death.

¶18. Only days later, on January 14, 1997, Jones moved the trial court to add Dr. Rawson as a defendant. Through further discovery from Dr. Rawson, Jones discovered the Newborn Group's legal relationship to Dr. Rawson and again moved the trial court to add them as named defendants. The trial court did not act on these motions until approximately six months later, on July 8, 1997. Thus, the trial court's dilatory

conduct is responsible for as much, if not more, of a delay than counsel for Jones. It is unfair to accuse an injured party of sleeping on her rights when the trial court had its finger on the snooze button.

¶19. The majority cites *Womble v. Singing River Hosp.*, 618 So.2d 1252, 1268 (Miss.1993) where we held that the statutory period of limitations should be tolled for a reasonable period of time to allow plaintiffs to acquire and peruse the medical records that would provide a basis for any alleged negligence. As the majority notes, *Womble* further held that even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of facts that give him a cause of action against that person. *Id.* at 1267. This is precisely the situation we are presented with today. The majority argues that Jones was aware that Dr. Rawson was Timothy's physician from day one. No one disputes this. However, under the language of *Womble*, this is immaterial. The important fact is that even though Jones knew Dr. Rawson's name, she had *no knowledge of any facts that gave her a basis for a cause of action against him*. Jones therefore had no reason to join Dr. Rawson and the Newborn Group.

¶20. The majority offers *Doe v. Mississippi Blood Servs., Inc.,* 704 So. 2d 1016 (Miss. 1997) as evidence that a plaintiff who idly bides their time in pursuit of the true identities of fictitious parties will suffer dire consequences for employing such a lackadaisical attitude in their search. The facts, and more importantly the time frame, in *Doe* are easily distinguishable from the case at bar. In *Doe*, the Court held that Rule 9(h) "is not designed to allow tardy plaintiffs to sleep on their rights *for seven years*, make one phone call prior to the running of the statute, and then enjoy the benefits of the rule." *Doe,* 704 So. 2d at 1019 (emphasis added). Here, only a few days passed before Jones moved to add Dr. Rawson after discovering a basis for a negligence claim against him.

¶21. The majority's use of *Bean v. Broussard,* 587 So. 2d 908 (Miss. 1991) is a red herring. The underlying matter involved a medical malpractice action, but the appeal itself involved only Rule 11 considerations. This fact notwithstanding, the quoted passage in the majority opinion proves Jones's point. Negligence in some cases cannot be established without expert medical testimony. *Id.* at 913. Jones did not have a basis to accuse Dr. Rawson of negligent conduct until she deposed the other physician. *See also Barnes v. Singing River Hosp. Sys.,* 733 So. 2d 199, 205 (Miss. 1999) (holding that while the plaintiffs may have been aware of child's injuries before statute of limitations expired, they could not have reasonably known that hospital was responsible until a medical expert notified them of the basis for a claim against hospital).

¶22. By holding as it does today, this Court affirmatively encourages the old "shotgun approach" to litigation, where the injured party sues everyone in sight and some beyond to ensure that all are properly named and joined before the statute of limitations runs on the claim. This type of practice is frowned upon by the courts as counter productive to efficient use of the judicial system and was part of the impetus behind developing rules of procedure. A return to this free-wheeling style of complaint practice will leave the defense bar howling in protest and innocent citizens who were in the wrong place at the wrong time saddled with the unenviable task of extracting themselves from baseless litigation.

**EASLEY, J., JOINS THIS OPINION.**